UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

No. 24-2741

---

THUNDERHEAD OF ANKENY, INC.,

*Declaratory Judgment Plaintiff-Appellant*,

v.

CHICKEN BONES OF KEARNEY, INC.,

*Declaratory Judgment Defendant-Appellee*

---

APPEAL FROM THE U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
HON. STEPHEN H. LOCHER

---

# APPELLANT'S REPLY BRIEF

---

Joshua J. Conley
John D. Gilbertson
ZarleyConley PLC
580 Market Street, Suite 101
West Des Moines, Iowa 50266
Telephone: (515) 558-0200
Email: jconley@zarleyconley.com
Email: jgilbertson@zarleyconley.com
ATTORNEYS FOR APPELLANT,
THUNDERHEAD OF ANKENY,
INC.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ 2
TABLE OF AUTHORITIES ..................................................................... 3
INTRODUCTION ................................................................................ 5
ARGUMENT ........................................................................................ 5
A. Thunderhead's Precedent and CBK's Accusations are Unrefuted ................. 5
B. Declaratory Judgment and Removal Jurisdiction Differ in Scope of Considerations ................................................................................ 7
C. CBK's Proffered Case Law Favors Thunderhead, or is Incorrect ................. 9
*1. Riley v. Dozier* .................................................................................. 10
*2. Colonial Penn Group, Inc. v. Colonial Deposit Co.* ................................. 11
*3. Northeast Fed. Credit Union v. Neves* .................................................. 13
*4. Flexible Staffing Servs. v. Integro Empl. Servs* ...................................... 14
D. The Timing of Thunderhead's Declaratory Action Does Not Negate Jurisdiction ................................................................................... 16
E. Thunderhead Withdraws Its Request for Oral Argument ............................ 18
CONCLUSION ................................................................................... 19
CERTIFICATE OF SERVICE .............................................................. 21
CERTIFICATE OF COMPLIANCE ......................................................... 22

## TABLE OF AUTHORITIES

### Cases

*Cagle v. NHC Healthcare-Maryland Height, LLC,*
*78 F.4th 1061 (8th Cir. 2023)*......................................................................6

*Colonial Penn Grp., Inc. v. Colonial Deposit Co.*,
834 F.2d 229 (1st Cir. 1987)........................................................... 10, 11, 12

*Flexible Staffing Servs. v. Integro Empl. Servs., Inc.*,
No. CIV. 08-5018, 2008 WL 1928827 (W.D. Ark. Apr. 29, 2008)....... 13, 14

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
824 F.2d 953 (Fed. Cir. 1987) .......................................................... 4, 5, 7, 8

*Johnson v. MFA Petrol. Co.*,
701 F.3d 243 (8th Cir. 2012). .........................................................................7

*MedImmune, Inc. v. Genetech, Inc.*,
549 U.S. 118 (2007)........................................................................... 4, 7, 15

*Northeast Fed. Credit Unition v. Neves*,
837 F.2d 531 (1st Cir. 1988)............................................................. 7, 12, 13

*Northeast Ill. Reg’l Commuter R.R. v. Howey Farinea & Downes*,
212 F.3d 1010 (7th Cir. 2000) ........................................................................7

*Ogala Sioux Tribe v. C & W Enters., Inc.*,
487 F.3d 1129 (8th Cir. 2007) ..................................................................7, 16

*Playboy Enters., Inc., v. Pub. Serv. Com’n of Puerto Rico*,
906 F.2d 25 (1st Cir. 1990)..........................................................................11

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
344 U.S. 237 (1952)........................................................................... 14, 15

*Riley v. Dozier Internet Law, PC*,
371 Fed. Appx. 399 (4th Cir. 2010) .........................................................9, 10

*Shore Bank v. Harvard*,
934 F.Supp.2d 827 (E.D. Va. 2013) ....................................................6

*Topp-Cola Co. v. Coca-Cola Co.*,
314 F.2d 124 (2d Cir. 1963) ....................................................17

*U.S. Water Servs., Inc. v. ChemTreat, Inc.*,
794 F.3d 966 (8th Cir. 2015) .................................................... 5, 7, 8, 15

*Vanguard Research, Inc. v. PEAT, Inc.*,
304 F.3d 1249 (Fed. Cir. 2002) ....................................................5

**Statutes**

18 U.S.C. § 1836(d) ....................................................17

28 U.S.C. § 1331 ....................................................4

28 U.S.C. §1331 ....................................................15

**Treatises**

Federal Practice & Procedure § 2767 (4th ed.)....................................................7

Federal Practice & Procedure § 3722 (Rev. 4th ed.) ....................................................6

## INTRODUCTION

Chicken Bones of Kearney, Inc. (hereinafter "CBK") has failed to address why the accusations it has made in light of the most applicable case law does not require reversal of the lower court's dismissal of Thunderhead of Ankeny, Inc. (hereinafter "Thunderhead")'s suit. CBK contends that similarities between the principle framework of determining federal question jurisdiction for removal and declaratory judgment permits disregarding the distinct scope of considerations each procedural mechanisms operates upon. In contradiction of 28 U.S.C. § 1331, CBK further seeks recognition of a temporal prohibition to the availability of a party seeking declaratory judgment relief.

## ARGUMENT

### A. Thunderhead's Precedent and CBK's Accusations are Unrefuted

In CBK's brief, the precedent Thunderhead identified and discussed as most relevant went without meaningful rebuttal. It is unrefuted that jurisdiction lies in the answer to the basic question of "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech*, Inc., 549 U.S. 118, 127 (2007). This purpose cannot be defeated by a stratagem that "avoids magic words." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) (citations omitted).

CBK's response makes no mention of the Federal Circuit's holding in *Goodyear* finding a pending state court action provided grounds to seek declaratory relief before the federal district court. *Id.* Similarly, CBK does not dispute that declaratory judgment actions related to validity and infringement were available even when pending claims between the parties did not invoke those rights. *See U.S. Water Servs., Inc. v. ChemTreat, Inc.*, 794 F.3d 966, 976 (8th Cir. 2015); *Vanguard Research, Inc. v. PEAT, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002). As found in *Vanguard*, the alleged intellectual property rights holder's "*present intentions* do not control whether a case or controversy exists." 794 F.3d at 1255. Nor can declaratory relief be defeated by a "carefully drafted" complaint attempting to distance from the connections pointedly made therein. *U.S. Water*, 794 F.3d at 975 (emphasis added).

The repeated allegations CBK made against Thunderhead for the alleged unauthorized use of CBK's intellectual property have also gone uncontroverted. Rather, CBK only argues a letter referring to Thunderhead as a "New Infringing Store," which although relevant, is of no matter as CBK levied its accusations just months prior to the filing of the underlying action. *See* App. 101; R. Doc. 1-6, at 2; *see also* App. 009 R. Doc. 1, at 9, ¶ 68. "[T]he very purpose for an accused infringer to bring a declaratory action is to seek a judicial determination that a coercive claim by the [alleged rights] holder would *not* succeed on the merits." *U.S. Water*, 794 F.3d at 977.

The abject failure of CBK to address these allegations and the most relevant case law is sufficient grounds to reverse the lower court's finding.

### B. Declaratory Judgment and Removal Jurisdiction Differ in Scope of Considerations

Thunderhead does not dispute that "the same principles apply" to removal and declaratory judgment analyses. Federal Practice & Procedure § 3722 (Rev. 4th ed.). Each apply, however, to a different nexus of consideration at the outset. Removal confines the court's consideration to whether actual claims give rise to federal question based on a "necessary element" of those claims. *See e.g., Cagle v. NHC Healthcare-Maryland Height, LLC, 78 F.4th 1061, 1066 (8th Cir. 2023)*; *cf.* App. 222; R. Doc. 20, at 6 (citing *Cagle*). In contrast, declaratory judgment jurisdiction requires the broader consideration of the hypothetical causes of action that the allegations levied by the accuser give rise to.[1] *Ogala Sioux Tribe v. C & W Enters.,*

---

[1] In *Shore Bank v. Harvard*, cited by CBK, the parties to the case presented a unique situation where the parties agreed the coercive action was limited to a state law claim for breach of contract that was currently pending in state court. 934 F.Supp.2d 827, 838–39 (E.D. Va. 2013). The district court, therefore, analyzed whether the breach of contract claim involved a federal question as a necessary element under the Troubled Asset Relief Program (TARP). *Id*. at 836. The Court found that the question of whether TARP was a necessary element of the breach of contract claim or merely a defense was governed by state contract law and thus, dismissal for a lack of federal question jurisdiction was appropriate. *Id*. at 840–41. Thunderhead's claims, as acknowledged by the lower court, do not turn on contract interpretation. *See* App. 223; R. Doc. 12, at 7 (finding CBK's breach of contract claims are unrelated to Thunderhead's declaratory claims on non-infringement and invalidity).

*Inc.*, 487 F.3d 1129, 1130 (8th Cir. 2007) (citations omitted); *see also* Federal Practice & Procedure § 2767 (4th ed.) ("[I]t now seems settled that [a party threatened with an infringement suit] can sue for a declaratory judgment of invalidity or noninfringement [because] the federal nature of the claim appears on the complaint … and the precise issue could have been litigated in federal court in a coercive action brough by the [the alleged rights owner]."[2]

This distinction is not novel. It is widely established that a plaintiff can avoid removal by alleging only state law claims. *Johnson v. MFA Petrol. Co.*, 701 F.3d 243, 247 (8th Cir. 2012). It is equally established that a party cannot defeat declaratory judgment by avoiding "magic words such as 'litigation' or 'infringement.'" *See Goodyear*, 824 F.2d at 956; *see also MedImmune*, 549 U.S. at 127. Where the former is designed to protect plaintiffs as the "master of the complaint," the latter is designed to protect an allegedly infringing defendant "from uncertainty and delay regarding its legal rights." *U.S. Water*, 794 F.3d at 972.

---

In short, *Shore* does not disrupt the distinct scope of considerations between declaratory judgment and removal jurisdiction.

[2] CBK cites its own precedent that stands for this same proposition regarding the consideration of the hypothetical rather than limiting to the actual. *See Northeast Ill. Reg'l Commuter R.R. v. Howey Farinea & Downes*, 212 F.3d 1010, 1015 (7th Cir. 2000) (citations omitted); *Northeast Fed. Credit Unition v. Neves*, 837 F.2d 531, 535 (1st Cir. 1988).

CBK does not attempt to challenge this distinction. Instead, CBK construes the case law to contend that a pending state action involving similar issues severs the existence of subject matter jurisdiction. Such a contention is plainly at odds with the Federal Circuit's holding in *Goodyear*, where subject matter jurisdiction was found over a declaratory judgment action despite the existence of a state court action for trade secret misappropriation which involved the same technology. *Goodyear*, 824 F.2d, at 954. CBK's premise is also at odds with the holdings in *U.S. Water* in which the Eighth Circuit rejected the proposition that a "carefully drafted" complaint could avoid the apparent accusations made therein for declaratory judgment purposes. 794 F.3d at 975.

CBK has failed to present a basis of any kind, let alone a compelling one, for this Court to upend existing precedent requiring consideration beyond actually pending claims when determining whether subject matter jurisdiction exists.

### C. CBK's Proffered Case Law Favors Thunderhead, or is Incorrect

Without addressing the distinct scope of relevant considerations between removal and declaratory judgment jurisdiction, CBK cites to multiple cases while providing this Court with superficial analysis. This results in CBK unwittingly supplementing Thunderhead's position with additional supporting precedent.

### *1. Riley v. Dozier*

*Riley v. Dozier Internet Law, PC* is cited by CBK for the proposition that the prior existence of a state common law trademark infringement action deprives a federal court of subject matter jurisdiction over a declaratory judgment action brought by the state court defendant. Appellant Brief, at 10–11. Reliance on this unpublished decision quickly runs afoul when the First Circuit's affirming decision is taken into consideration. *Riley v. Dozier Internet Law, PC*, 371 Fed. Appx. 399 (4th Cir. 2010).[3]

While the Fourth Circuit ultimately affirmed the district court, it did so only on the grounds that the district court had *discretion to abstain* from exercising subject matter jurisdiction—not that it lacked it. *See Id.* at 406. Unequivocally, the First Circuit stated, "We hold *only* that the district court had discretion to abstain here and did not in these circumstances abuse its discretion in doing so." *Id.* (emphasis added).[4]

---

[3] Thunderhead asks the Court take note that CBK failed to apprise the Court of the First Circuit's findings that contradict CBK's argument even though CBK included the First Circuit decision in its Table of Authorities. *See* ABA Model Rules of Professional Conduct 3.3 (Candor Toward the Tribunal).

[4] Abstention is irrelevant to the present appeal as the lower court did not abstain from exercising jurisdiction and instead found that the state court action between the present parties was not parallel. *See* App. 223; R. Doc. 12, at 7 (discussing the lack of CBK's need to prove infringement to prevail under its state court action claims or to have the "issue [] litigated at all"). Nor does the issue before the Court pertain to

The *Riley* decision contains a vigorous dissent by Circuit Judge Davis, who notes *inter alia* that the majority's opinion avoids the question of the existence of subject matter jurisdiction and instead elected to "rescue" the district court by "rummag[ing] through its treasure chest of abstention doctrines to find a basis on which to affirm..." *Id.*, at 407–08 (Davis, J., dissenting). Judge Davis further points out that despite the outcome in the declaratory defendant's favor, the *entire Fourth Circuit panel* rejected his contention that he did not assert a Lanham Act *allegation* in his state court complaint even though he only brought state law claims. *Id.*, at 406.

*Riley*, properly interpreted, came to a finding directly at odds with those of the district court in this case, which looked only at CBK's *claims,* despite many hallmarks of the Lanham Act and Defend Trade Secret Act. *See* Add. 008–009. This Court should, of course, take the holdings in *Riley* into account to the extent they demonstrate that the careful drafting of a state court action petition cannot preclude the existence of subject matter jurisdiction. In fact, it can do the opposite.

### *2. Colonial Penn Group, Inc. v. Colonial Deposit Co.*

CBK next cites *Colonial Penn Grp., Inc. v. Colonial Deposit Co.* for similar support, but again misses the mark. 834 F.2d 229 (1st Cir. 1987). In that case, the

---

parallel state actions. *See* Appellant Brief, at 9 (Statement of the Issue Presented for Review).

declaratory defendant ("Deposit") sued the declaratory plaintiff ("Penn") in state court alleging infringement of Deposit's Rhode Island-registered trademark. *Id.* at 231. Penn subsequently filed a federal action, asserting *a prior federal* right to the use of "Colonial Penn" in Rhode Island, and asking the district court to find that its trademark had priority over Deposit's *state* rights in the mark. *Id.* at 231–232. The lower court dismissed *sua sponte* on the grounds it lacked subject matter jurisdiction, or in the alternative that federal abstention would be appropriate. *Id*. at 232.

On appeal, the First Circuit noted the "peculiar[]" nature of Penn's requested relief, highlighting that Penn was asserting only that it had "a federally protected mark that protects it against state common law infringement liability," and that "in each of the cases cited by [Penn], the defendants were representatives of a state regulatory body." *Id*. at 237. In essence, Penn was asking for a declaration that its federal rights would *preempt*—i.e., act solely as a defense to—a coercive action by Deposit to enforce its state trademark rights. *Id.* at 237; *see also Playboy Enters., Inc., v. Pub. Serv. Com'n of Puerto Rico*, 906 F.2d 25, 30 (1st Cir. 1990) (discussing *Colonial Penn* as a situation where the declaration sought was federal trademark preemption as a defense to state law liability).

The First Circuit expressly stated, "in the typical federal trademark. . . declaratory judgment action, a potential infringer seeks declaration that [defendant's] *federal* rights will not be infringed by the plaintiff's actions, or that the

defendant's mark is invalid" and that "[s]uch declaratory judgment actions clearly are permissible." *Id.* at 235 (emphasis in original).

Correctly viewed, *Colonial Penn* was a decision where subject matter jurisdiction was lacking because the declaration sought was limited to a defense against a state law action. This holding is no different from the holding in *Ogala Sioux Tribe* discussed in Appellant's initial Brief. Critically, this decision does not undermine Thunderhead's position but bolsters it because Thunderhead seeks declaration against hypothetical coercive federal actions of infringement and misappropriation based on CBK's repeated accusations of engaging in such conduct.

### *3. Northeast Fed. Credit Union v. Neves*

In its Brief, CBK asserts that *Northeast Fed. Credit Union v. Neves* "confirm[s] that courts should examine the claims actually plead by a declaratory defendant in a previously filed and pending state court action, when determining federal question jurisdiction exists over a declaratory action." Appellee Brief, at 14 (citing *Neves*, 837 F.2d at 535). This is inaccurate.

*Neves* reiterates what Thunderhead has already acknowledged. Namely, jurisdiction in a declaratory judgment and removal action turns on whether the parties, placed in the appropriate positions, present a federal question that is more than a mere defense. *Id*. at 535. The decision, however, does not find expressly or implicitly that it is appropriate to limit the determination of subject matter

jurisdiction over a declaratory judgment action to the face of a pending state court complaint. *See generally id.*

Looking deeper into the First Circuit's holding, the decision discusses that Northeast Federal Credit Union was seeking a declaratory judgment based on a due process defense to prevent attempts to garnish funds by Anthony Neves (the State of Maine's tax assessor) based on state tax law. *Id.* at 535. Notably, CBK quotes and emphasizes in its Brief that "Neves' action to enforce the levy in the Maine state court did not in any way 'itself involve a claim under federal law.'" *Id.* at 535; Appellant Brief, at 16. Because of this, the declaratory judgment action was based on an actual (and simultaneously hypothetical) action based exclusively on state tax law and reliance on due process protections was insufficient to create federal question jurisdiction as it was only a federal defense.

As before, Thunderhead does not ask the Court ignore this case as it strengthens the basis for reversing the lower court's decision.

#### ***4. Flexible Staffing Servs. v. Integro Empl. Servs***

In contradiction of all the superior authority, CBK relies on a two-and-a-half page, unpublished, and unreviewed decision rendered seventeen years ago by the Western District of Arkansas that has been cited by only one other judicial body—the lower court in this suit. *Flexible Staffing Servs. v. Integro Empl. Servs., Inc.*, No. CIV. 08-5018, 2008 WL 1928827 (W.D. Ark. Apr. 29, 2008). The state action in

*Flexible Staffing* arose after Flexible Staffing sued, in part, for trademark infringement under the laws of Arkansas. *Id*. Integro sought declaratory relief on the basis that Flexible Staffing's trademarks were invalid due to being generic or merely descriptive as dictated under the Lanham Act. *Id.*

Paying lip service to the Eighth Circuit's holding in *Ogala Sioux Tribe*, the district court surmised: "Simply put, the Court should consider the character of the underlying state action to determine whether the requirements of federal-question jurisdiction have been satisfied." *Id*. at *3 (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248 (1952)). As discussed by Thunderhead in its principal Brief as well as herein, no such restriction to the scope of consideration is present in any other precedent.

Moreover, the U.S. Supreme Court's *Wycoff* decision relied upon by the district does not stand for the proposition either. As with the previously discussed precedent, the Supreme Court found "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the *threatened action*, and not the defense, which will determine whether there is federal-question jurisdiction." *Wycoff*, 344 U.S. at 248. Moreover, the Supreme Court did not render a decision on the issue "[s]ince this case should be dismissed in any event, it is not necessary to determine whether, on this record, the *alleged controversy* over an action that may

be begun in state court would be maintainable under the head of federal-question jurisdiction." *Id*. at 248–49.[5]

The holding in *Flexible Staffing* is simply an untested decision that stands as an outlier that upends long-standing precedent. If given any weight by the Court, it would threaten the very nature of the "all-circumstances-test" as the scope of relevant circumstances would constrict to the claims raised in a state court action. *MedImmune*, 549 U.S. 118. It would also create a mechanism for a declaratory action to be defeated simply by filing a state court action "carefully drafted" to omit claims that raise a federal question in contradiction of Eighth Circuit precedent. *U.S. Water*, 794 F.3d at 975. This circumvention also runs contrary to the jurisdiction afforded the federal judiciary under 28 U.S.C. §1331.

To the extent the Court addresses the holdings in *Flexible Staffing*, Thunderhead requests *Flexible Staffing*'s decision be found to have been rendered in manifest error of the law.

### D. The Timing of Thunderhead's Declaratory Action Does Not Negate Jurisdiction

Much ado is made by CBK about the timing of the Thunderhead's declaratory action. CBK argues that because Thunderhead had recently failed to obtain

[5] This decision from the Supreme Court was issued in 1952, which used a different standard than the "all-the-circumstances test" adopted in 2007. *See* Appellant Brief, at 17–18 (discussing *MedImmune*, 549 U.S. 118).

summary judgment in the state court action that it bears on the question of whether federal question jurisdiction exists. *See e.g.*, Appellee Brief, at 4. This is patently false.

Thunderhead recognizes that this Court in *Ogala Sioux Tribe* notes, "Most important, however, is the fact that the tribe's declaratory judgment action is essentially reactive in nature." 487 F.3d at 1132. The decision, however, does not elaborate on this statement. No precedent, beyond *Flexible Staffing*, cites to this statement that Thunderhead is aware of.

On its face, the above quote draws attention to Ogala Sioux Tribe's failed attempt to raise tribal immunity as a defense in its motion to dismiss during arbitration. *Id*. at 1131. Hence, the defensive nature of Ogala Sioux Tribe's basis for seeking declaratory judgment was emphasized by it being raised only after the defense failed in lower proceedings.

Should the Court choose to adopt its earlier comment as a restriction to the availability of declaratory judgment jurisdiction, the results would be disastrous. In essence, if a declaratory judgment action were cast as being reactive, such as by having a dispositive effect on a state court claim, jurisdiction would be extinguished where it would otherwise exist. This would create an untenable situation where an accused party would be prohibited from the vindication the Declaratory Judgment Act was designed to afford until the state court action was resolved—potentially

erroneously due to the incorrect presumption the state court plaintiff had rights it did not in fact have. *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125 (2d Cir. 1963) ("One who is subjected to charges of infringement and the threat of legal proceedings need not wait until his accuser chooses to bring suit to secure a determination of his rights."); *see also* App. 223; R. Doc. 12, at 7 (lower court finding that the validity of CBK's intellectual property is presumed under its state court action claims).

Lest it be overlooked, Thunderhead learned just months prior to the filing of its declaratory action that Mr. Colin Nabity, owner of CBK, had been aware of Thunderhead's existence and menu offerings back in 2014. *See* App. 020; R. Doc. 1, at 19, ¶ 159 (Thunderhead Complaint alleging the same). Based on this information, Thunderhead brought Count Six of its declaratory action asking the lower court find the statute of limitations, set forth by 18 U.S.C. § 1836(d), time-barred recovery for any alleged trade secret misappropriation under the Defend Trade Secrets Act. *See* App. 026; R. Doc. 1, at 26, ¶¶ 208, 213 (Thunderhead Complaint alleging the same).

Thunderhead's declaratory action is timely and not reactive. Even if it were, this is an improper basis to find subject matter jurisdiction is absent.

### E. Thunderhead Withdraws Its Request for Oral Argument

Considering the one-sided and overwhelming precedent in support of Thunderhead's position and the uncontroverted accusations made by CBK against

Thunderhead, the oral argument request made by Thunderhead is respectfully withdrawn. Thunderhead, will of course, be at the Court's disposal to present oral argument if the Court finds that it will be of use.

## CONCLUSION

To resolve the cloud of uncertainty caused by CBK's persistent accusations of infringement, Thunderhead requests reversal of the dismissal of its declaratory judgment action due to a lack of subject matter jurisdiction.

Respectfully submitted,

Dated: January 24, 2025

**ZARLEYCONLEY PLC**

By: /s/Joshua J. Conley
/s/John D. Gilbertson
Joshua J. Conley, AT0011828
John D. Gilbertson, AT0014515
580 Market Street, Suite 101
West Des Moines, IA 50266
Telephone: (515) 558-0200
Facsimile: (515) 558-7790
jconley@zarleyconley.com
jgilbertson@zarleyconley.com
**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John D. Gilbertson

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION, AND TYPEFACE AND TYPE-STYLE REQUIREMENTS**

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   **X** This document contains 3,895 words; **or**

   __ This brief uses a monospaced typeface and contains ____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   **X** This document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font; **or**

   ___This document has been prepared in a monospaced typeface using ______ with ____ characters per inch in ___ style.

3. The undersigned further certifies that the electronic version of this brief has been scanned for viruses and is virus-free.

Dated: January 24, 2025

/s/John D. Gilbertson
John D. Gilbertson
Attorney for Plaintiff-Appellant